JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MICHAEL CIMINO

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Glanzberg Tobia Law, P.C., David S. Glanzberg, Esq. & Robert M. Tobia, Esq. 123 S. Broad St., Ste 1640, Phila,

## DEFENDANTS

DANIEL A. DODSON and MASTERMIND, INC. (f/k/a CO-CONNECT, INC.),

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28. U.S.C. SECTION 1391
Brief description of cause:
BREACH OF CONTRACT

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS **A CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE
02/10/2022

SIGNATURE OF ATTORNEY OF RECORD
DAVID S. GLANZBERG, ESQ AND ROBERT M. TOBIA, ESQ.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ MICHAEL CIMINO, 7925 RIDGE AVE, UNIT 1, PHILA, PA 19128

Address of Defendant: _____ DANIEL A. DODSON and MASTERMIND, INC.

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ **is** / ☑ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/10/2022 _____ *Must sign here* _____ Attorney-at-Law / Pro Se Plaintiff _____ 50820 *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

- ☑ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, DAVID S. GLANZBERG, ESQ. _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 02/10/2022 _____ *Sign here if applicable* _____ Attorney-at-Law / Pro Se Plaintiff _____ 50820 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **MICHAEL CIMINO** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **DANIEL A. DODSON and MASTERMIND,** | : | |
| **INC. (f/k/a CO-CONNECT,INC.),** | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for

plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time

of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on

the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff

regarding said designation, that defendant shall, with its first appearance, submit to the clerk of

court and serve on the plaintiff and all other parties, a Case Management Track Designation Form

specifying the track to which that defendant believes the case should be assigned.


**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)    Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. (  )

(b)    Social Security – Cases requesting review of a decision of the Secretary of Health and

Human Services denying plaintiff Social Security Benefits. (  )

(c)    Arbitration – Cases required to be designated for arbitration under Local Civil Rule

53.2. (  )

(d)    Asbestos – Cases involving claims for personal injury or property damage from

exposure to asbestos. (  )

(e)    Special Management – Cases that do not fall into tracks (a) through (d) that are

commonly referred to as complex and that need special or intense management by the court.

(See reverse side of this form for a detailed explanation of special management cases.)   (  )

   **(f)**  Standard Management – Cases that do not fall into any one of the other tracks.   (✔ )


Date 02/10/22                                    DAVID S. GLANZBERG, ESQ.
                                                 Attorney for MICHAEL CIMINO


        Telephone 215-981-5400        FAX Number 267-319-1993
               E-Mail Address    DAVID.GLANZBERG@GTLAWPC.COM


(Civ. 660) 10/02

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CIMINO | : | CASE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | DEMAND FOR JURY TRIAL |
| DANIEL A. DODSON and | : | |
| MASTERMIND, INC. (f/k/a | : | |
| CO-CONNECT, INC.), | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT FOR MONETARY RELIEF

Plaintiff, through his undersigned attorneys, for his Complaint at Law and in

Equity against Defendants alleges the following:

## INTRODUCTION

1.   Plaintiff MICHAEL CIMINO hereby submits his complaint against Defendants

DANIEL A. DODSON and MASTERMIND, INC. (formerly known as CO-CONNECT, INC.), as follows:

## PARTIES, JURISDICTION AND VENUE

2.   At all times mentioned herein, the below named Plaintiff was and is a citizen

of the Commonwealth of Pennsylvania, residing in the County of Philadelphia, at the address as

listed:

> MICHAEL CIMINO ("Plaintiff Cimino")
> Unit #1
> 7925 Ridge Avenue
> Philadelphia, PA  19128

3.   At all times mentioned herein, iTV Partners.TV, INC. ("iTV") was and is a

Pennsylvania Business, owned and operated by Plaintiff Cimino and which was to be used as

Plaintiff Cimino's designee/assignee for the compensatory transactions described herein.

4.   At all times mentioned herein, Defendant, DANIEL A. DODSON, was and is a citizen of the State of Georgia, residing in the County of Fulton, at the address as listed:

> DANIEL A. DODSON ("Defendant Dodson")
> 1450 W. Peachtree Street NW
> Atlanta, Georgia 30309

5.   At all times mentioned herein, Defendant MASTERMIND, INC. (formerly known as CO-CONNECT, INC.), was and is a Nevada corporation with its headquarters and principal place of business located at 112 North Curry Street, Carson City, Nevada, 89703, acting as digitalmarketing agency that plans, executes, and analyzes digital marketing initiatives for its clients, primarily large corporate clients with well-known brands.

6.   At all times relevant to this action, Defendant Dodson served as the Majority Shareholder and Chief Executive Officer of Mastermind Involvement Marketing, JV ("MIM") until the completion of the reverse merger transaction between MIM and Defendant C0-CONNECT, INC. on or about February 14, 2018. Thereafter, Defendant CO-CONNECT, INC. changed its name to MASTERMIND, INC. Defendant Dodson currently serves as the Chief Executive Officer of MASTERMIND, INC.

7.   Plaintiff is informed and believes, and based thereon alleges, that Defendants named herein were, at all times, relevant to the action, the agents, servants and employees of each of the other Defendants, named herein, and were at all such times acting within the course and scope of such agency and employment with the consent and permission of the other Co-Defendants and each of the Defendants named herein, ratified each of the acts of the other Co-Defendants.

8.   This Court has jurisdiction under 28 U.S.C. Section 1332 based on diversity of citizenship between Plaintiff Cimino and Defendants, and because the amount in controversy exceeds $75,000.00. This Court has supplemental jurisdiction over all state claims under 28 U.S.C. Section 1367, et seq.

9.   Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391, et seq.

## GENERAL ALLEGATIONS

10.  Many private companies seek to access the U.S. capital markets by merging with existing public companies. These transactions are referred to as "reverse mergers" or "reverse IPOs." In a reverse merger, the investors of the private company acquire a majority of the shares of a public shell company, which is then combined with the purchasing entity. The private company trades shares with the public shell in exchangefor the shell's stock, transforming the acquiror into a public company. Conventional IPOs can take months or more to materialize and allow private companies to become public without raising capital. A reverse merger is less dependent on market conditions and is much less expensive than a traditional IPO and functions as a conversion mechanism and, as such, market conditions have little bearing on the offering.

11.  Plaintiff Cimino was asked by Defendant Daniel Dodson in February of 2017 individually and on behalf of Dodson and Dodson's entity at the time, Mastermind Involvement Marketing, JV ("MIM"), to assist them in acquiring a shell company for the completion of such a reverse corporate merger.

3

12. Defendant Dodson asked Plaintiff Cimino how, in terms of stock shares and consulting fees, Plaintiff Cimino was previously compensated for other work of this type. Defendant Dodson then represented to Plaintiff Cimino that if Plaintiff Cimino "came to work with him (Defendant Dodson)," he would "treat him (Plaintiff Cimino) much better" meaning he would compensate Plaintiff Cimino in a more lucrative way.

13. Acting in his capacity as the Majority Shareholder and Chief Executive Officer of MIM, Defendant Dodson agreed with Plaintiff Cimino, that if Plaintiff could successfully introduce Dodson and MIM to an appropriate shell company to help MIM effectuate the reverse merger, Defendants Dodson and MIM would provide a stock compensation package valued at approximately fifteen million dollars ($15,000,000). This agreed upon compensation equates to approximately 2-3 million shares of Co-Connect stock valued in the range of $5-$5.50 per share at the time (the "Agreement"). The Defendant (including his employees) would, and did, receive in excess of 30 million shares in the transaction which equated to over $165 million dollars. Plaintiff Cimino's share would, in context, be less than 10% of the transaction, which is within the customary range.

14. Acting in direct reliance on Defendant Dodson's stated representations and for the benefit of him and MIM, Plaintiff did exactly as Defendant Dodson requested. Plaintiff Cimino successfully introduced Defendant Dodson and MIM to the shell company, Defendant Co-Connect, Inc. ("CCON" or "the Shell"), and its representative, Mr. Henrik Rouf, working with a business colleague of Plaintiff Cimino's, Mr. David Volpe, his counterpart at the shell, who was receiving his shares from CCON.

4

15.  After Plaintiff Cimino spoke with the Shell and Mr. Rouf, Defendant Dodson, individually and on behalf of MIM, requested that Plaintiff Cimino draft a non-disclosure agreement with the Shell so that Defendant Dodson could learn of the Shell's and Mr. Rouf's names/identities and then perform the necessary due diligence in connection with a potential deal with the Shell and MIM (the "NDA").

16. Dated February 24, 2017, the "Original NDA", section 11, included language stating that, "[t]he parties hereby agree and acknowledge that they have been introduced by iTV and shall not enter into negotiations or any business relationship without iTV and shall in no way circumvent iTV in any way." iTV was to be Plaintiff Cimino's corporate designee for Plaintiff's compensation   for his services at the time of the completion of the merger transaction and which Defendant Dodson had acknowledged previously. A true and correct copy of the Original NDA is attached as Exhibit "A".

17.  While MIM and Defendant Dodson did not dispute or otherwise object to this non-circumvent language, Defendant Dodson suggested to Plaintiff Cimino that the NDA should only be between MIM and the Shell, and that MIM should have a separate non-circumvention agreement with iTV.

18. Accordingly, on February 27, 2017, Plaintiff Cimino sent Defendant Dodson an email, individually and as CEO of MIM, stating that, "until we put something in writing, we can let this email serve as a Non-Circumvent for this and other matters…."; Thereby, in effect incorporating the Original NDA language & protections for Plaintiff Cimino between Plaintiff Cimino and Defendants while the Defendants and Mr. Rouf's "Non-Circumvent Agreement" would be signed by Defendants & Rouf. Within four (4) minutes of that email, Defendant

5

Dodson responded, "Understood and accepted." Meaning Defendant Dodson, on behalf of the Defendants, accepted the terms and conditions of the February 24th Original NDA. Attached hereto as Exhibit "B".

19. The purpose of the written February 24, 2017 non-circumvent agreement (the "Original NDA") between Defendants was to prevent Plaintiff Cimino from being bypassed or circumvented in the reverse merger and to ensure that Plaintiff would receive full compensation for his contribution, efforts, and involvement in introducing the reverse merger parties as requested by Defendant Dodson, acting in his capacity of Chief Executive Officer of Defendant MIM, in accordance with the Agreement.

20. The February 27th 2017 NDA was thereafter executed, and due diligence was performed. Defendant Dodson and Plaintiff Cimino again discussed the stock compensation terms as the reverse merger partners were getting to know each other. Plaintiff Cimino was in contact with key representatives of Co-Connect and MIM about the introduction, the deal, and the terms of the letter of intent ("LOI").

21. Among the many edits that Plaintiff Cimino made to the LOI at the behest and for the benefit of the Defendants, was the insertion of the terms of the compensation that Defendant Dodson had promised to Plaintiff Cimino and upon which Plaintiff Cimino relied in agreeing to introduce Dodson and MIM to each other as potential reverse merger partners. Defendants had ordered Plaintiff Cimino to be entirely transparent with the seller, Rouf and his staff. This language memorializes the compensation portion of the Agreement which states: "Notwithstanding the above, 2 to 3 million shares shall be issued to Seller's

6

broker/PubCo consultant (or his/its assigns) post-Closing. This section may be further defined in the Definitive Agreement." See Exhibit "C" attached hereto.

22. Plaintiff Cimino's input into the LOI was accepted and appreciated by

Defendant Dodson, MIM, and representatives of Co-Connect including Henrik Rouf and Ben Yankowitz. Yankowitz agreed that this language, and the range of shares earmarked for Plaintiff Ciminos' compensation, was within the custom and usage for such matters and inserted it into what was to be the final LOI. Yankowitz and Plaintiff Cimino were the two contacts for each party and diligently worked together in drafting and negotiating the LOI, and sought and obtained approval from their respective principles during these negotiations. All parties were ready to sign the version drafted, until Defendant Dodson learned that Plaintiff Cimino's stock compensation would have to be issued from Defendant Dodson's personal stock holdings instead of being added at the time of the transaction.

23. After the final version of the LOI was signed, Plaintiff Cimino was notified by Defendant Dodson that Plaintiff Cimino would not be receiving the 2-3 million shares for his work from the initial shares to be received at the close of the transaction. While Plaintiff Cimino's other proposed edits to the LOI were accepted by the parties, Defendant Dodson and MIM had failed to include Plaintiff Cimino's compensation terms in the final LOI; the terms of which, just hours earlier were within the usual and customary amount of shares for Plaintiff Cimino's compensation and was agreeable to Henrik Rouf and Ben Yankowitz .

24. Defendant Dodson claimed that Henrik Rouf would not let him issue the "2-3

million Shares" as an "add-on" but Defendant Dodson and the company had no restrictions on how to allocate the over 30 million shares they would receive in the completed merger transaction. Defendant assured Plaintiff Cimino that the Defendants would indeed get the shares that had been promised, delivered to Plaintiff Cimino. Defendant Dodson further assured Plaintiff Cimino that compensation would proceed as agreed.

25. Defendant Dodson knew that he had to compensate Plaintiff Cimino for the successful introduction and related services as per the Agreement, but ultimately to refused to do so; and in fact, sent Plaintiff Cimino an email terminating their relationship on April 13th, 2017. Said email was an admission by Defendant Dodson, that Plaintiff Cimino had provided services to Defendant Dodson and stated that "Shares of the new public company may be granted to your wife's consulting company after the merger. The grant and number of shares will be determined by our management based on the services you have provided to date, your confidentiality and execution of a non-disclosure/non-disparagement agreement with Company (forwarded next week)". Despite demand, Plaintiff Cimino has never received any compensation. See Exhibit "D".

26. On or about February 20, 2018, Defendant Dodson filed Form 8-K with The United States Securities and Exchange Commission revealing that a material event had taken place on February 14, 2018; specifically, that the reverse merger transaction, which the Plaintiff was instrumental in bringing about had, in-fact, closed and completed on February 14, 2018.

27. Plaintiff Cimino has yet to receive any compensation for successfully introducing Defendant Dodson to the Shell, which is in breach of the Agreement and the Non-Circumvent Agreement. Nor did Plaintiff Cimino receive any compensation for the

8

substantial amount of additional work done in connection with bringing MIM and Co-Connect, Inc. together as reverse merger partners, which was at Defendants' specific request. Defendant Dodson and MIM have each been unjustly enriched at Plaintiff Cimino's expense.

28.  Plaintiff Cimino's claims arise out of Defendant Dodson's failure to compensate Plaintiff Cimino for the services he rendered to Defendant Dodson and MIM, and for successfully introducing Defendants' Dodson and MIM to the Rouf Shell, Co-Connect INC., at the behest and request of Defendant Dodson.

29.  As a result of the foregoing and following allegations and Causes of Action, Plaintiff seeks, inter alia, an order requiring Defendants to pay compensatory damages, attorneys' fees, litigation fees and costs, statutory interest, and to provide any further relief that the Court may find appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

30.  Plaintiff Cimino repeats and realleges the allegations of paragraph "1" through "29" of this Complaint, as though set forth in this paragraph at length.

31.  Plaintiff Cimino entered into the Agreement with Defendants Dodson and MIM (now Co-Connect, Inc.) whereby Dodson, the CEO of MIM and on whose behalf Plaintiff Cimino was acting, agreed with Plaintiff Cimino that if Plaintiff Cimino could successfully

9

introduce Defendant Dodson and MIM to an appropriate shell company to help MIM effectuate a reverse merger, Defendant Dodson would provide a stock compensation package of between 2-3 million shares valued at approximately fifteen million dollars ($ 15,000,000) (the "Agreement").

32. Defendant Dodson, acting in his capacity as CEO of MIM, also entered into a Non-Circumvent Agreement memorialized in an email exchange between and among Plaintiff and Defendant Dodson, to prevent Plaintiff Cimino from being bypassed or circumvented in the reverse merger and to ensure that Plaintiff would receive full compensation for their contribution, efforts, and involvement in introducing the reverse merger parties as requested by Defendant Dodson acting in his capacity of Chief Executive Officer of Defendant MIM. (See Exhibit "B")

33. Defendants Dodson and MIM breached the Agreement and the Non-Circumvent, by their conduct, including but not limited to the following:

a. Pursuant to the Agreement, failing to provide Plaintiff Cimino with a stock compensation package of between "2 - 3 million shares" valued at approximately $15 million (equating to between two and three million CCON shares) for his role in successfully introducing MIM to the Shell for the completion of the reverse merger.

b. Pursuant to the Agreement, failing to provide Plaintiff Cimino with any compensation whatsoever for successfully introducing MIM to the Shell for the completion of the reverse merger.

c. Pursuant to the Non-Circumvent Agreement, failing to

10

provide Plaintiff Cimino with full compensation for his contribution, efforts, and involvement in introducing the reverse merger parties as requested by Defendant Dodson acting in his capacity of Chief Executive Officer of Defendant MIM.

      d.  Pursuant to the Non-Circumvent Agreement, bypassing

and circumventing Plaintiff Cimino in the reverse merger.

      e.  Plaintiff Cimino performed the work required by him in accordance with the terms of the Agreement and the Non-Circumvent Agreement and successfully introduced the Shell to Defendants Dodson and MIM. The reverse merger was completed.

      34.  Despite repeated demands to Defendants for payment, the Defendants have failed and refused and continue to fail and to refuse to pay Plaintiff Cimino any compensation for the services performed for them in successfully introducing the Shell to Defendants Dodson and MIM and the completion of the reverse merger.

      35. The failure to remit payment to Plaintiff Cimino is a material breach of the Agreement of the Parties.

      36.  As a proximate result of Defendants' Dodson and MIM's breaches of the Agreement and the Non-Circumvent Agreement, Plaintiff Cimino has been damaged in the amount of $15,000,000.00 or a higher amount according to proof at trial.

## SECOND CAUSE OF ACTION: BREACH OF IMPLIED CONTRACT

      37.  In the event it is determined that no written contract existed between the Plaintiff and Defendants as alleged in Count 1, the plaintiff alleges as follows:

11

38. Plaintiff Cimino repeats and realleges the allegations of paragraph "1 " through "37" of this Complaint, as though set forth in this paragraph at length.

39. As set forth herein, Defendants agreed to compensate Plaintiff Cimino with a stock compensation package valued at approximately $15 million (equating to between 2-3 million CCON shares) for his role in successfully introducing MIM to the Shell for the completion of the reverse merger, pursuant to the Agreement.

40. Defendant Dodson, acting in his capacity as CEO of MIM, also entered into a Non-Circumvent Agreement memorialized in a February 27, 2017 email exchange between Plaintiff Cimino and Defendant Dodson. This Agreement was intended to prevent Plaintiff Cimino from being bypassed or circumvented in the reverse merger and to ensure that Plaintiff Cimino would receive full compensation for their contribution, efforts, and involvement in introducing the reverse merger parties as requested by Defendant Dodson acting in his capacity of Chief Executive Officer of Defendant MIM. (See Exhibit "B")

41. Plaintiff Cimino successfully performed in accordance with the terms of the Agreement and the Non-Circumvent Agreement and successfully introduced the Shell to Defendants Dodson and MIM. The reverse merger was completed.

42. Due to the existence of the implied in law and implied in fact contracts, Plaintiff Cimino is entitled to compensation for services rendered to Defendants Dodson and MIM.

12

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT/QUANTUM MERUIT

43. In the event it is determined that no written contract and no implied in-fact

contract between Plaintiff and Defendants Dodson and MIM as alleged in Counts One and Two,

Plaintiff alleges as follows:

44. Plaintiff repeats and realleges the allegations of paragraph "1" through "43"

of this Complaint, as though set forth in this paragraph at length.

45. As more fully described herein, Plaintiff' expectation of payment from

Defendants Dodson and MIM was reasonable.

46. Plaintiff Cimino has conferred a substantial benefit upon Defendants Dodson

and MIM.

47. Defendants Dodson and MIM have been unjustly enriched at the expense of

Plaintiff.

48. Due to Defendants' Dodson and MIM's unjust enrichment, Plaintiff Cimino is

entitled to the proper compensation, as discussed, and acknowledged by Defendant Dodson.

49. Defendants Dodson's and MIM's unjust enrichment at the Plaintiff Cimino's

expense has damaged Plaintiff Cimino.

50. The fair market value of said services at the time they were furnished is

approximately $15,000,000.00. This the amount of compensation to Plaintiff Cimino

pursuant to the Agreement and the Non-Circumvent Agreement.

51. Defendants Dodson and NIIM have refused to pay Plaintiff Cimino the fair

market value for the services rendered to them.

13

## FOURTH CAUSE OF ACTION:  PROMISSORY ESTOPPEL

52.  Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 of this Complaint as though set forth in this paragraph at length.

53. Defendants Dodson and MIM through their actions, assurances and/or promises made to Plaintiff Cimino, during the course of the matter, intended to cause the Plaintiff Cimino to confer a monetary benefit upon the Defendants.

54.  Plaintiff Cimino did in fact rely upon the Defendants actions, assurances and/or promises in providing the services to the Defendants.

55.  Defendants have wrongfully refused to pay for the services despite demand all to the detriment of Plaintiff Cimino.

56. Defendant Dodsons' conduct is wrongful, negligent, intentional, reckless and/or fraudulent and has caused damage to Plaintiff Cimino in the amount of approximately $15,000,000.00.

## PRAY FOR RELIEF

WHEREFORE, upon the aforesaid Causes of Action, Plaintiff Michael Cimino seeks the following relief:

i.  Judgment entered in favor of Plaintiff Cimino and against Defendants Dodson and Co-Connect on Counts One through Three of Plaintiff' Complaint;

ii. An award of compensatory damages in favor of Plaintiff Cimino in an amount

14

of not less than $15,000,000.00;

      iii. An award of statutory and pre-judgement interest;

      iv. Plaintiff's litigation costs and fees;

      v. Any further relief that the Court may find appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that the trial of all issues be heard by a Judge

sitting with jury.

Dated: 02/10/2022

Philadelphia, Pennsylvania

GLANZBERG TOBIA LAW, P.C.

BY:_____

DAVID S. GLANZBERG, ESQUIRE
David.glanzberg@gtlawpc.com
ROBERT M. TOBIA, ESQUIRE
Robert.tobia@gtlawpc.com
123 SOUTH BROAD STREET, STE 1640
PHILADELPHIA, PA 19109
TEL: (215) 981-5400
FAX: (267)-319-1993

ATTORNEYS FOR PLAINTIFF

15